FILED
97 DEC 22 AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**ARTHUR ANDERSEN, LLP, et al.,** ]
]
]
    Petitioners, ]
] CV 97-N-2600-NE
    vs. ]
]
**INTERGRAPH CORPORATION,** ]
]
    Respondent. ]

ENTERED
DEC 22, 1997

## Memorandum of Opinion

### I. Introduction.

The petitioners in this case, Arthur Andersen, LLP ("Arthur Andersen") and David Greed ("Greed"), seek to vacate an arbitration order issued by the arbitration panel holding Arthur Andersen and Mr. Greed, non-parties to the underlying arbitration proceeding, in contempt. *See Arthur Andersen, LLP's Amended Petition to Vacate Arbitration Order,* at 1-4. The matter is currently before the court on the motion to dismiss pursuant to Rules 12(b)(1), want of subject matter jurisdiction, 12(b)(5), insufficiency of service of process, and 12(b)(6), failure to state a claim upon which relief can be granted, filed by respondent Intergraph on October 20, 1997. Also before the court is Intergraph's motion for Rule 11 sanctions, filed November 10, 1997. The motion to dismiss has been briefed by the parties and is ripe for decision. Upon due consideration, the motion to dismiss will be granted. The motion for Rule 11 sanctions will be held for hearing pursuant to the terms of the order entered contemporaneously with this opinion.

9

## II. Factual Background.

Intergraph, the respondent in this action, and Bentley Systems, Inc. ("Bentley") are engaged in arbitration in Huntsville, Alabama, before a panel of three arbitrators. On May 15, 1997, the panel issued a subpoena duces tecum to Mr. Greed, who is an accountant employed by Andersen in Philadelphia, Pennsylvania. This subpoena was "domesticated" and issued by the Philadelphia County Court of Common Pleas ("Philadelphia State Court"). The Philadelphia State Court subpoena was served on Mr. Greed.

Thereafter, Mr. Greed, by his employer Andersen, filed a motion in Philadelphia State Court to quash the subpoena. Counsel for the parties to the arbitration and counsel for Mr. Greed subsequently agreed to have the matter decided by the arbitration panel and an order to that effect was entered by the Philadelphia State Court. That order provided that the decision of the panel shall be binding. *Order by Court of Common Pleas of Philadelphia County entered June 18, 1997*, ¶1. Moreover, the parties agreed that if the panel declined to rule, "the parties agree to return to this Court to submit the issue for resolution by this Court."[1] *Id.* ¶2.

On July 7, 1997, the arbitration panel denied the motion to quash and found that the deposition subpoena was to be enforced. The parties were unable to agree on the dates the deposition(s) were to be conducted and, on July 18, 1997, the arbitration panel ordered Mr. Greed and his co-worker, Brian Hughes ("Hughes"), to appear for two 12-hour days

---

[1] The petitioners dispute the breadth of this aspect of the agreement. Specifically, the petitioners assert that "Arthur Andersen never agreed to submit any issue of punishment to the arbitration panel." *Arthur Andersen's and David Greed's Opposition to Intergraph's Motion to Dismiss*, ¶3. For reasons explained *infra*, a determination of this issue is not necessary to the court's disposition of the matters pending here.

2

on August 7 and August 8, 1997, and further ordered that if the depositions could not be completed on those two days that the depositions be continued on Saturday, August 9, 1997.

Arrangements were made for both depositions to be conducted in Philadelphia, Pennsylvania, on the dates ordered by the arbitration panel. On August 5, 1997, Intergraph's counsel confirmed (via facsimile) with the deponent's counsel that the depositions would begin at 7:00 a.m. on Thursday, August 7, 1997, at the Bellevue ("Park Hyatt") Hotel in Philadelphia. The facsimile further stated, "I understand from conversations with Mark Stern that you want to switch Messrs. Greed's and Hughes' deposition dates. That is okay with me, as long as they are both available for the three days as ordered by the arbitrators." *Richard Zuckerman letter to Robin H. Graves dated August 5, 1997* (Respondent's Exhibit F).

Because Richard Zuckerman was the attorney who would be deposing Mr. Greed, he left Detroit, Michigan, on Wednesday, August 6, 1997, for Philadelphia and checked into the Bellevue Hotel late the same day. Mr. Zuckerman was joined there by a legal assistant, Stacey DuPont, who had been involved in the case and who is resident in Honigman Miller Schwartz and Cohn's Florida office.

Beginning at about 7:00 p.m. on August 6, 1997, Richard Zuckerman received a series of voicemails at the hotel from both Warren Lightfoot and Robin Graves, counsel for Mr. Greed, who advised Mr. Zuckerman that Mr. Greed was doing an initial public offering in New York and would not be appearing for his deposition on Thursday, August 7, but would instead appear on that Friday and/or Saturday. Counsel also informed Mr.

3

Zuckerman that Mr. Hughes was also "busy" and would be unable to be deposed on that Thursday.

Mr. Hughes' deposition took one day and was conducted on Friday, August 8. Mr. Greed's deposition took three-quarter's of a day and was ultimately conducted on Saturday, August 9. Thus, only two days were necessary for the depositions.

As a result of Mr. Greed's failure to appear for his scheduled deposition and the last minute notification received by Intergraph's counsel, Intergraph incurred what it deems as "unnecessary costs and attorney's fee[s]." *Brief in Support of Intergraph Corporation's Motion to Dismiss*, at 3. Thus, while these depositions ultimately required only two days, because of Mr. Greed's last-minute postponement, Intergraph's counsel was required to devote three days to the matter.

As a result, Intergraph sought Arthur Andersen's voluntary agreement to pay the damages incurred by Intergraph. Arthur Andersen offered to pay the hotel, meals and parking bills incurred by counsel for Intergraph on August 7, 1997. *Amended Petition to Vacate Arbitration Order*, ¶9. Apparently, however, Intergraph refused to pay Intergraph counsel for his billable time. Ultimately, the matter was not resolved and on August 22, 1997, Intergraph sought a contempt order from the arbitration panel. Thereafter, on September 23, 1997, the arbitration panel found that Mr. Greed had "unilaterally ignored a Subpoena issued through the Philadelphia Court of Common Pleas," that "Mr. Greed shall pay to Intergraph its damages of $5,794.00 by September 30, 1997." *Letter from American Arbitration Association to Richard Zuckerman and Robin Graves dated September 23, 1997* (Respondent's Exhibit G). The panel also found that if Mr. Greed did

4

not so pay Intergraph by that date, the panel would refer the matter to the Philadelphia State Court for hearing and determination as to whether Mr. Greed should be held in either civil or criminal contempt and the penalty therefor. *Id.* Additionally, the arbitration panel would recommend that the Philadelphia State Court hold Mr. Greed in contempt. *Id.*

On October 1, 1997, Arthur Andersen commenced the present action against Intergraph. On October 7, 1997, Arthur Andersen filed an amended petition to vacate the arbitration order adding Mr. Greed as a petitioner. In the petition, Mr. Greed and Arthur Andersen argue that under the Federal Arbitration Act ("FAA") only a federal district court is empowered to punish an arbitration witness for contempt, citing 9 U.S.C. § 7. *Amended Petition to Vacate Arbitration Order*, ¶12. Moreover, the petitioners claim that because they are not parties to the underlying arbitration proceeding, it was abusive for Intergraph to bring a motion for contempt. *Id.* ¶11. The petitioners, therefore, seek to have this court vacate the order of the arbitration panel finding Mr. Greed in contempt. *Id.*, at 4.

### III. Standard for Motion to Dismiss.

For purposes of ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take the allegations of the complaint as true and construe them in a manner most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976); *Hepperle v. Johnston*, 544 F.2d 201 (5th Cir. 1976).

5

## IV. Discussion.

### A. Subject-Matter Jurisdiction.

#### 1. The Federal Arbitration Act as a Basis for Jurisdiction.

The primary basis for Intergraph's motion to dismiss is that this court lacks subject-matter jurisdiction over this action. *See Intergraph Corporation's Motion to Dismiss*, at 1. Intergraph contends that the FAA, as a matter of law, does not "furnish subject matter jurisdiction in federal courts and that the existence of a federal question 'must be disclosed upon the face of the complaint'," *id.* at 6 (quoting *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28, 94 S. Ct. 1002, 1004, 39 L. Ed. 2d 209 (1974)), and that "mere reference to a federal statute is insufficient to establish federal jurisdiction if the dispute does not involve a 'substantial question of federal law'." *Id.* at 6 (quoting *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255 (6th Cir. 1994)).

As the basis for federal subject-matter jurisdiction,[2] the petitioners rely upon section 7 of the FAA, which provides the following:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, *upon*

---

[2] The petitioners assert jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 7. *Amended Petition to Vacate Arbitration Order* ¶4.

6

> *petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.*

9 U.S.C. § 7 (1997) (emphasis added). Citing no decisional or other authority to support subject matter jurisdiction, the petitioners contend that the "literal language of [this section] conveys jurisdiction over such matters to the District Courts." *Arthur Andersen's and David Greed's Opposition to Intergraph's Motion to Dismiss*, ¶15. The court finds this argument untenable in light of long-standing and well-established FAA jurisprudence.

In fact, courts have long held that the FAA does not confer subject matter jurisdiction on federal courts. Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32, 74 L. Ed. 2d 765 (1983). Though not the first time to articulate the rule, the Supreme Court in 1983 stated:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet *it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.*

*Moses H. Cone*, 460 U.S. at 25 n.32, 103 S. Ct. at 942 n.32 (emphasis added). And, although many of the rights that are sought to be enforced in arbitration are created by federal statute (the FAA), the Supreme Court has held that these rights are not among those giving rise to federal question jurisdiction. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9, 104

7

S. Ct. 852, 861 n.9, 79 L. Ed. 2d 1 (1984). Finally, a party or non-party seeking to enforce rights created by the Arbitration Act must do so in the state courts unless federal jurisdiction can be independently established. *See Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*, 577 F.2d 264, 268-69 (5th Cir. 1978).

Certainly, the principal difficulty with the FAA is that it suffers badly from poor draftsmanship. As discussed *supra*, section 7 of the FAA, which deals with the problem of compelling attendance of witnesses at arbitration, provides for a petition to "the United States district court . . . [to] compel the attendance of such person or persons." 9 U.S.C. § 7 (1997). In addition to section 7, there exist other provisions of the FAA that refer to "the United States court," 9 U.S.C. §§ 9, 10, & 11, in a manner that suggests a grant of jurisdiction. However, these references have not been understood to confer jurisdiction on federal courts.

Section 9, regarding the confirmation of arbitration awards, states that, if the parties in their agreement have not specified the court to which an application to confirm the arbitration award may be made, "then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9 (1997). Section 10 provides that the same "United States court" may make an order vacating the arbitration award, while section 11 allows the same "United States court" to modify or correct the award. 9 U.S.C. §§ 10-11 (1997). Arguably, each of these sections seems on its face to confer jurisdiction on the United States courts. A literal reading, as suggested by the petitioners, *Arthur Andersen's and David Greed's Opposition to Intergraph's Motion to Dismiss* ¶15, would mean that for any arbitration to which the FAA applies,

8

petitions to compel, confirm, vacate, modify and to compel the attendance of witnesses could all be brought as original proceedings in the federal courts.

Despite such a literal reading of these sections, the federal courts have consistently applied the *Moses H. Cone* analysis to the various and several provisions of the FAA and have held that these sections, including section 7, do not confer federal subject-matter jurisdiction. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997) (citing 9 U.S.C. §§ 7, 9-11); *see also Loral Corp. v. Swiftships, Inc.*, 77 F.3d 420, 422 (11th Cir. 1996) (holding that subject matter jurisdiction under section 9 "must be based upon either diversity of citizenship or the existence of a federal question"); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957, 961 (S.D.N.Y. 1988) (citing 9 U.S.C. §§ 7, 9-11); *Giangrande v. Shearson Lehman / E.F. Hutton*, 803 F. Supp. 464, 470 (D. Mass. 1992) (holding that sections 7, 9, 10, and 11 "have not been understood to confer jurisdiction on federal courts"); *C.P. Robinson Construction Co. v. National Corp. for Housing Partnerships*, 375 F. Supp. 446, 448-49 (M.D.N.C. 1974) (citing section 3); *Instituto Cubano De Establizacion Del Azucar v. T/V Firbranch*, 130 F. Supp. 170 (S.D.N.Y. 1954) (citing sections 5 and 7); *Metropolitan World Tanker Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional*, 427 F. Supp. 2, 3-4 (S.D.N.Y. 1975) (citing section 8); *Ballentine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17 (2d Cir. 1962) (citing section 9); *Paley Associates, Inc. v. Universal Woolens, Inc.*, 446 F. Supp. 212 (S.D.N.Y. 1978) (citing section 10).

The petitioners have not directed the court's attention to, and the court has been unable to locate, any controlling case in which section 7 of the FAA, or any other section for that matter, confers subject-matter jurisdiction on federal courts. Indeed, the Supreme

Court and Eleventh Circuit's FAA jurisprudence on this point compels the conclusion that section 7, together with the other sections of the FAA, do not provide a jurisdictional basis for this action. As a result, Intergraph's motion to dismiss will be granted on this basis.

### 2. Federal Question Jurisdiction.

Because section 7 of the FAA does not provide an independent statutory grant of federal subject matter jurisdiction, the court must now turn to the second potential jurisdictional basis: federal question jurisdiction. *See* 28 U.S.C. § 1331 (1997). Federal question jurisdiction exists only when the "well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2856, 77 L. Ed. 2d 420 (1983); *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28, 94 S. Ct. 1002, 1004, 39 L. Ed. 2d 209 (1974); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997). Mere reference to a federal statute is insufficient to establish federal jurisdiction if the dispute does not involve a "substantial question of federal law." *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255 (6th Cir. 1994).

The amended petition to vacate filed by Arthur Andersen and Mr. Greed does not raise a federal question. *See generally Arthur Andersen, LLP's Amended Petition to Vacate Arbitration Order*. As discussed *supra*, even though section 7 of the FAA may appear to "create[] a cause of action," *see Franchise Tax Bd.*, 463 U.S. at 27-28, 103 S. Ct. at 2856, the Supreme Court has held that a suit brought pursuant to the FAA is not intrinsically a case presenting a federal question. *Baltin*, 128 F.3d at ___. As the Court

stated in *Moses H. Cone*, "*The Arbitration Act* . . . creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it *does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.*" *Moses H. Cone*, 460 U.S. at 25 n.32, 103 S. Ct. at 942 n.32 (1983) (emphasis added). As a result, this court does not have federal question jurisdiction over this case.

### 3. Diversity Jurisdiction.

Because there is no federal question raised in the petition, diversity of citizenship is the only remaining proper ground for federal subject-matter jurisdiction. Section 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . . (1) Citizens of different States . . . ." 28 U.S.C. § 1332 (1997).

In the present case, it is not clear whether Arthur Andersen, Mr. Greed and Intergraph are of diverse citizenship. However, the amount in controversy, by the petitioners' own admission is $5,794, which is much less than the $75,000 required by the diversity jurisdiction statute. *See Arthur Andersen, LLP's Amended Petition to Vacate Arbitration Order* ¶10. As a result, diversity jurisdiction does not exist because there is a "legal certainty" that the amount in controversy is less than $75,000. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994) (stating that district court lacks diversity jurisdiction where it appears to a "legal certainty" that plaintiff's claim is for less than the jurisdictional amount) (citing *St. Paul's Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938)).

11

Although this court has no subject-matter jurisdiction over this action, the court is also concerned that the petitioners not only attempted to invoke subject-matter jurisdiction via section 7 without foundation, but also contorted the terms of section 7 beyond that section's clear meaning. Section 7 creates the facility for a party who, wishing to compel the attendance of a witness or to seek punishment for neglect or refusal to attend, *may* seek the contempt power of the federal district court in the district where the arbitration panel sits. *See* 9 U.S.C. § 7 (1997). First, section 7 does not *compel* an aggrieved party seeking enforcement of an arbitration panel's order to do so in federal district court. Such action "may" be taken in the federal district court in the district where the panel sits, but it also may be taken elsewhere.

Second, and most important, is that section 7 is not drafted for the benefit of a witness who neglects or refuses to follow the orders of an arbitration panel. Instead, section 7 provides that an aggrieved party,

> [u]pon petition the United States district court . . . may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (1997). Because the petitioners in this action are neither *seeking to compel the attendance* of a witness before the arbitration panel nor *seeking punishment* of a witness who neglected an arbitration panel's order or refused to attend pursuant to such an order, looking to the "literal language of the statute" as the petitioners ask this court to do, *Arthur Anderson and David Greed's Opposition to Intergraph's Motion to Dismiss*,

12

¶15, section 7 does not even apply to Arthur Andersen and David Greed's petition for relief here.

### B. Motion for Rule 11 Sanctions.

The court also has for consideration Intergraph's motion for Rule 11 sanctions, filed November 10, 1997. Upon complying with the safe-harbor provisions of Rule 11 and finding that the petitioners had failed to voluntarily dismiss their complaint, Intergraph filed this motion asking the court to impose sanctions on the petitioners and their counsel and to award Intergraph the costs and attorneys' fees incurred in this action. *Intergraph Corporation's Motion for Rule 11 Sanctions* at 1-2. The court will retain jurisdiction for the purpose of hearing and deciding the motion for sanctions.[3]

---

[3] Though it may seem anomalous to dismiss an action for lack of subject-matter jurisdiction and then to specifically retain jurisdiction for the purpose of ruling on a Rule 11 motion, it is clear that an award of costs and attorney's fees is a collateral matter over which a court may retain jurisdiction even after being divested of jurisdiction on the merits. In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), the Supreme Court held that district courts retain jurisdiction to award attorney's fees pursuant to Rule 11 after a voluntary dismissal of the suit. The Court stated:

> It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction. *See* 28 U.S.C. § 1919. This Court has indicated that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree." Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees. . . . Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue. . . .

*Id.* at 395-96, 110 S. Ct. at 2455-56 (citations omitted); *see also Willy v. Coastal Corp.*, 503 U.S. 131, ___, 112 S. Ct. 1076, 1080, 117 L. Ed. 2d 280 (1992) (holding that an award of attorney's fees pursuant to Rule 11 is permissible following an improper removal and remand); *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 451-52, 102 S. Ct. 1162, 1166, 71 L. Ed. 2d 325 (1982) (holding that an award of attorney's fees under 42 U.S.C. § 1988 is collateral to decision on the merits, and thus not subject to the 10-day limitation of a motion to amend or alter a judgment). *Cf. Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S. Ct. 1717, 100 L. Ed. 2d 178 (1988) (holding that the district court can retain jurisdiction for the limited purpose of ruling on the sanctions issue, while the substantive merits are reviewed by the court of appeals).

13

## V. Conclusion.

Accordingly, respondent Intergraph's motion to dismiss will be granted. The court will defer ruling on Intergraph's motion for Rule 11 sanctions pursuant to the order entered in conformity with this memorandum of opinion.

Done, this __19th__ of December, 1997.

*[signature]*

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE